# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS - HYANNIS

================================

| | |
|---|---|
| IN THE MATTER OF: . | Case #01-19312 |
| . | |
| ARTHUR W. WHITMAN . | Hyannis, Massachusetts |
| . | **August 24, 2007** |
| Debtor . | 9:30 a.m. O'clock |

================================

| | |
|---|---|
| DONALD R. LASSMAN, TRUSTEE . | Adv. #06-1250 |
| Plaintiff, . | |
| v. . | |
| PATRICIA L. WHITMAN, et al . | |
| Defendants . | |

================================

### TRANSCRIPT OF HEARING ON:
### (#90)  PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
### (#91)  BRIEF/MEMORANDUM SUPPORTING  [#90];
### (#103) DEFENDANT'S OPPOSITION  TO MOTION FOR SUMMARY JUDGMENT
### BEFORE THE HONORABLE WILLIAM C. HILLMAN, J.U.S.B.C.

**APPEARANCES:**

For the Plaintiff:                              JAMES M. LISTON, ESQ.
                                                Bartlett Hackett Feinberg, P.C.
                                                155 Federal Street, 9th Fl.
                                                Boston, MA  02110


For the Defendant:                              JEFFREY J. CYMROT, ESQ.
                                                Sassoon & Cymrot
                                                84 State Street
                                                Boston, MA  02109


Electronic Sound Recording Operator:    Patricia Heaney

**Proceedings Recorded by FTR Gold Digital Sound Recording
Transcript Produced by Certified Transcription Service**

## GCI TRANSCRIPTION SERVICES
### 210 Bayberry Avenue
### Egg Harbor Township, NJ  08234-5901
### 1-609-927-0299     FAX 1-609-927-9768     1-800-471-0299
### e-mail - irwingloria@comcast.net

1 (At Tape #1, Index #87. 9:30 a.m.)

2        CLERK: Court is in session.  All rise.  Be seated,

3 please.

4        THE COURT:   Lassman vs. Whitman.  Mr. Liston.

5        MR. LISTON:   Good morning, Your Honor.

6        THE COURT:   Go ahead.

7        MR. LISTON:   Good morning, Your Honor.  Jim Liston

8 on behalf of Donald Lassman, the Chapter 7 Trustee of Arthur

9 Whitman.

10        This is a hearing on a motion for summary judgment on

11 four counts of a complaint, and the Trustee asserts that the --

12 that summary judgment should be entered.   There are no genuine

13 issues of material fact.

14        And one thing we did recently, Your Honor, was we

15 amended the complaint.  We would ask that the summary judgment

16 simply apply to the second amended complaint that we recently

17 filed, and that this motion be applicable to that complaint.

18 All we did there was ask for a couple of additional remedies.

19 We didn't change any of the Counts or the facts of the

20 complaint, but we're seeking against Mr. Whitman, in addition

21 to the various remedies that we had sought previously, that his

22 $15,000 exemption be denied and that a judgment be entered

23 against him for monies which he took from the bankruptcy estate

24 by way of a refinancing.

25        THE COURT:   Oh, I have no problem with that.

1          MR. LISTON:   Thank you, Your Honor.  And that was

2     allowed a few days ago.

3          THE COURT:   It was, yes.

4          MR. LISTON:   Count I of the complaint, Your Honor,

5     is the Count seeking to avoid a post-petition mortgage in favor

6     of Coastal Capital Corporation.  Mr. Whitman refinanced this

7     property with his wife.  They own the property as tenants by

8     the entirety, and while in bankruptcy, without Court

9     authorization, he obtained refinancing from Coastal Capital

10    Corporation on May 18, 2005.  The Trustee was not apprised of

11    this refinancing until actually late in 2006.

12         The mortgagee refinanced an existing City mortgage --

13    Citicorp mortgage for $163,000 that existed prior to the filing

14    of the case and was a valid mortgage on the property, and

15    refinanced that mortgage with a $209,000 mortgage, essentially

16    allowing the Whitmans to remove approximately $30,000 in equity

17    from the property.  Again, Mr. Whitman did not seek Court

18    approval for this transaction, and none was granted.  The

19    property had not been abandoned; it was property of the estate,

20    at least his interest was.

21         Now we're seeking to avoid the mortgage under

22    362(a)(4) as an active violation of the automatic stay and also

23    under Section 549(a) as a post-petition transfer, which we can

24    avoid as being unauthorized.  It's very similar to Your Honor's

25    situation, or a situation Your Honor had in the *Fedeli* case

1  where you were faced with another post-petition mortgage,

2  except in this case there was clearly some value that was taken

3  out of the estate.  I think in the **Fedeli** case there was a

4  question of whether or not there was really any value there.

5  Here, there is value, there is equity in the property, and

6  money was taken from the estate.

7          Adding to the unusual nature of the transaction, the

8  mortgage was not actually recorded until almost a year after it

9  was entered into; and just a few days before the mortgage was

10  recorded, the successor Trustee in this case, Mr. Lassman,

11  recorded with the Registry of Deeds a copy of the Chapter 7

12  petition.  Very fortuitously, that was done just before the

13  mortgage went to record.

14          So the mortgagee does not have a Section 549(c)

15  defense for good faith purchase, because that only occurs if a

16  copy of the petition hasn't been filed with the Registry of

17  Deeds before the mortgage is recorded.  So we don't know of any

18  defenses that this mortgagee has, and they haven't appeared in

19  the case.

20          We have -- initially, when we filed the complaint, we

21  did not know about the mortgage when we first began the action,

22  and we amended the case in March of this year when we found out

23  in the fall of 2006 that this mortgage had been taken, we

24  amended and added them as a party seeking to avoid the

25  mortgage.  We served them -- we served them at a Florida

1  address, which was right on the mortgage.  They never responded

2  to that -- to that service, and we were concerned, although

3  that particular mailing did not -- was not returned to us

4  unreceived, a few months later another mailing that we sent to

5  them at the same address, just keeping them in the chain of

6  service, was returned, indicating that they were no longer at

7  that address.

8         So we requested the issuance of an alias summons and

9  complaint, and we served the pleadings at a whole group of

10 addresses, both at a New York address, which we think was their

11 headquarters, which is also on the mortgage.  We served them at

12 C.T. Corporation, their agent for service and process in both

13 New York and Massachusetts; and we served Countrywide Home

14 Loans, which is the mortgage servicer, and -- for this  -- for

15 this mortgage now is receiving payments, and still they have

16 not responded.

17        We did find out that in April of this year that they

18 have surrendered their license to make mortgage loans in New

19 York, so we think they're out of business at this point.  We've

20 not been able to find anyone who's taking any responsibility

21 for the matter on behalf of Coastal Capital Corp.  Their

22 mortgage is still the mortgage of record.  No one has filed an

23 assignment of that mortgage.  As of yesterday they held this

24 mortgage in the Regis -- according to the Registry of Deeds

25 records.

1          So at this point, Your Honor, we feel we've done as

2  much as we can.  They're in default, and we're going to ask for

3  the entry of a judgment against them, avoiding their mortgage,

4  and as against the debtor, and also authorizing the sale of the

5  property free and clear of their mortgage, the entire property,

6  and I'm not sure exactly how we'll deal with the proceeds, and

7  with respect to that, but that plays into the Count II of the

8  complaint, but we think at this point that mortgage clearly --

9  we don't think it will have any defenses to avoidance anyway.

10 We're not sure what possible defenses they could raise to this,

11 so we would ask that that mortgage be avoided as an invalid

12 post-petition transfer.

13         That is Count I, Your Honor.

14         Count II of the complaint seeks a authorization for a

15 sale under Section 363(h) of both Mr. Whitman's interest in the

16 property as well as his spouse's interest, Patricia Whitman's

17 interest.  It is held as a tenancy by the entirety, and there

18 are four factors that we need to satisfy under 363(h).

19         One is that partition of the premises in kind between

20 the co-tenants is impracticable.  This is the type of property

21 that you really can't partition.  It's a single-family

22 residence in a residential neighborhood.  It's built for a

23 single-family.  It's not built to be partitioned.  It's not

24 practicable to do that.  We have affidavit testimony from both

25 the Trustee and an appraiser to that effect, and it really

1  hasn't been refuted in any way by the Whitmans, so we think

2  that Section 363(h)(1) is satisfied, and there is a lot of case

3  law that this type of property is -- is, by its very nature,

4  not subject to being partitioned.

5       The second prong of 363(h) is that the sale of the

6  estate's undivided interest in the premises must realize --

7  must be found to realize significantly less than a sale of the

8  property free and clear of the co-tenant's interest, and we

9  don't think there's any argument that can be made that a sale

10 of Mr. Whitman's tenancy by the entirety interest by itself is

11 going to bring -- is going to bring any more, or is not going

12 to bring less than a sale of the entire property.  There really

13 isn't any market out there for selling co-tenants' interests by

14 themselves.  It's a risky venture.  There really isn't -- there

15 aren't people who are in the business -- there are some people

16 who will buy those, but very, very few, and the market is

17 extremely limited.

18      And again, courts seems to be taking judicial notice

19 of the fact that this, this prong of the test can be met in

20 this situation by simply their knowledge that that type of a

21 sale does not generate more than a sale of the property by  --

22 the entire property by itself as a fee interest.  Again, this

23 has not been refuted by the Whitmans either in any of their

24 affidavits.

25      The next issue that we -- the Trustee needs to

1  satisfy and which we believe is satisfied is that there is a

2  substantial benefit to the estate, and that that benefit

3  outweighs the detriment to the co-tenant.

4       Here, the Whitmans have filed some affidavit

5  testimony that they believe that the detriment to Mrs. Whitman

6  is greater than the benefit to the estate.  We have stipulated

7  in this case as to the value of the property.  It's $338,000,

8  and we've also stipulated after negotiating and talking with

9  actuaries, both parties, that Mrs. Whitman would have a 57 per

10 cent actuarial interest in the proceeds of the sale of the

11 property, and Mr. Whitman would have a 43 per cent interest,

12 based on their respective lives and their -- and their

13 situations.

14      The Trustee's affidavit filed with the Court shows

15 that depending upon how the Coastal Capital Corp. mortgage is

16 dealt with, the estate would receive probably at a minimum

17 $50,000, and perhaps at a maximum as much as $138,000 from the

18 sale of this property.  Cases cited by the Trustee in the

19 memorandum of law that we filed indicate that courts have

20 allowed these types of sales where estates are going to receive

21 $38,000, $4,100, $12,500.  So clearly the amount of money here

22 that can be generated for the estate is substantial and is more

23 than the amounts that other courts have found is sufficient to

24 allow these types of sales to go forward.

25      The Whitmans have no children or relatives living

1  with them.  As far as we know right now there are -- and I

2  don't believe that they've indicated otherwise in their

3  documents.  They had indicated that their house is a meeting

4  place for the family members in the area, but they don't have

5  anyone there now.  I'm not sure the children have ever lived

6  with them there.  They have no illnesses or disabilities for

7  which the home is specially designed which would make moving

8  difficult.  So this is not a situation like **IN RE:  Coombs**

9  where you had a specially constructed property for someone who

10 had a disability.

11        The debtor has paid most of the expenses for this

12 property over the years, according to his deposition testimony.

13 His funds that he's generated have gone into an account and

14 paid the expenses.  Mrs. Whitman is not active in the Rochester

15 community in religious or social groups there, according to her

16 deposition testimony.  She is employed at Talbots' distribution

17 center in Lakeville.  She's been there for eighteen years.  She

18 makes $30,000 a year.  She has $63,000 in an IRA, another

19 $10,000 in money market funds.  Mr. Whitman receives, according

20 to his affidavit, $24,000 a year in Social Security, so between

21 them they'll have a $54,000 a year annual income.

22        Mrs. Whitman will receive from a sale a substantial

23 portion of the proceeds under various scenarios, and so she's

24 going to receive 50 per cent of -- 57 per cent of the net sale

25 proceeds, after payment of whatever portion of a mortgage

1  should be paid, if any -- if any.  It may be that she -- no

2  portion of the mortgage should be paid.

3          She retains the right under Section 363(i) to

4  continue to buy the property, to come in and basically put in

5  an offer at any point in time during the sale process to buy

6  the property from the Trustee or to settle with the Trustee and

7  buy out Mr. Whitman's interest.

8          And perhaps most importantly, Your Honor, the

9  Whitmans have already extracted $38,000 of equity from the

10 property in 2005 through their refinancing, that is -- was

11 improper at least with respect to Mr. Whitman.

12         So the Whitmans don't really dispute any of the

13 foregoing.  These facts are very substantial -- excuse me --

14 these facts are admitted.  Her position is that, number one,

15 she does meet with her family at this house, but we don't think

16 that that's enough of an issue that should prevent a sale of

17 the property.  And secondly, she says, "Well, I would have

18 trouble affording a new home of the same type in the same

19 neighborhood."

20         I don't know that that's a condition of the statute

21 or something the Trustee has to establish, that she can go out

22 and find the exact same property in the same neighborhood.  She

23 might have to downsize.  She might have to buy a condominium.

24 They may need to move to someplace else, but certainly they're

25 not going to be left destitute here.  She has assets.  There is

1  -- she's going to be receiving monies from the sale no matter

2  what, and they've already taken $40,000 out of the property.

3        So on the whole, Your Honor, we believe that based on

4  the essentially undisputed facts, from the deposition that

5  we've taken, and other facts that are evident from the

6  pleadings and the filings with the Registries of Deeds, that

7  the detriment to the estate -- the detriment to Mrs. Whitman

8  does not outweigh the benefit to the estate here.  There is a

9  substantial amount of proceeds that can be realized from a

10 sale.

11        The fourth requirement of Section 363(h) is that the

12 premises not be used in the production, transmission, or

13 distribution for sale of electric energy or natural or

14 synthetic gas for heat, light, or power; and I don't think

15 there's any question that this property is not of that nature.

16        So we think all of the Section 363(h) elements have

17 been proven, and we would ask that the Court enter a judgment,

18 summary judgment, directing that the property can be sold by

19 the Trustee.

20        The third Count of the complaint, Your Honor, is for

21 the distribution of the sale proceeds.  And here I think we

22 would leave it to the Court's discretion as to whether this

23 should be dealt with immediately at this point in the case or

24 whether that should be something that awaits an actual sale.

25 We were looking at a purchase of the property and the like, but

1   initially we would certainly like an order that the prop --

2   that the distribution of the proceeds will occur and can occur

3   as soon as we sell the property.

4        Originally the debtor objected to this -- to this

5   part of the Trustee's complaint because he argued that even if

6   we were to sell the tenancy by the entirety property, the

7   proceeds would be encumbered by the tenancy by the entirety

8   attributes, and the sale proceeds could not be distributed

9   until either one of the Whitmans was deceased, or there was a

10  -- or there was some sort of termination of that tenancy by the

11  entirety.  So that it didn't make any sense to sell the

12  property under 363(h) because we were going to have to hold the

13  proceeds anyway for some lengthy period of time.

14       The debtor filed a motion to dismiss, based on that

15  argument.  You denied that motion.  They took an appeal to the

16  U.S. District Court.  A few weeks ago the U.S. District Court

17  affirmed your denial of the motion to dismiss and issued an

18  opinion basically stating that those tenancy by the entirety

19  attributes do not stand in the way.  They are pre-empted.  They

20  are basically pre-empted by Section 363(j), which requires a

21  distribution of the proceeds of the sale under 363(h).

22       And so we argue at this point is that essentially any

23  arguments that -- that the proceeds can't be distributed are

24  not going to prevail, and they can be distributed and should be

25  distributed immediately, based on the cases cited by the U.S.

1  District Court once the sale occurs.  So we think that summary

2  judgment is appropriate on that Count as well, at least that

3  the proceeds can be distributed; and if there has to be then

4  some determination of how much will be distributed at that

5  point to who, that can be done maybe then, or it can be done

6  now.  We've set forth some scenarios in our motion for summary

7  judgment and in the Trustee's affidavit, which indicate how the

8  funds could be distributed.

9         And again, those scenarios indicate that the estate

10 will get at least 50,000 and could get as much as 138,000.

11        An interesting aspect of this post-petition mortgage,

12 Your Honor, is that if it's -- once it's avoided, the Citicorp

13 mortgage, which did exist on the property is gone.  It's been

14 discharged, so the property will be free and clear of all

15 liens.  And one possible scenario for distribution is to simply

16 take the proceeds of the sale and give 57 per cent to Mrs.

17 Whitman and give 43 per cent to the Trustee.  Then Mrs. Whitman

18 can go and attend to the Coastal Capital Corp. obligation that

19 she has.  Since she's not a debtor, she'll have to pay that,

20 and then the Trustee would have as much as $138,000 in that

21 situation.

22        At the same time, the Court might find that that

23 creates too much of a detriment to Mrs. Whitman, that because

24 she would get about $187,000 in that scenario, she would owe

25 about 205,000 on the Coastal Capital Corp. note, and if she had

1 to pay that, she would have a deficit there.  And I'm just

2 surmising on this, but I'm sure this is the argument Mr. Cymrot

3 would make.

4        So if that's -- frankly, if that scenario created too

5 much of a detriment, then the Court could simply order that the

6 sale take place and that for instance enough of the proceeds go

7 to pay the Coastal Capital Corp. obligation of Mrs. Whitman's,

8 at least up to the point of the Citicorp mortgage amount, which

9 was refinanced, the $163,000.

10        THE COURT:   You're making things too complicated.

11        MR. LISTON:   I -- I -- but in any event, I won't

12 stray down that road then, Your Honor.  It's -- but it

13 certainly -- the Coastal Capital Corp. mortgage has complicated

14 things a bit.

15        The fourth Count of the complaint is for revocation

16 of the debtor's discharge, and we're seeking summary judgment

17 on that as well.

18        There's no question the debtor refinanced the

19 property post-petition without Court authorization.  He

20 withdrew equity from the property in the form of loan proceeds

21 for his personal use.  He put them into his company, American

22 Business Solutions, and he failed to disclose the refinancing

23 to the Trustee.  We found out about it in the fall of 2006.  So

24 he never -- he never came forward with it.

25        He has not repaid the Trustee any of these monies.

1  That's why we're seeking a judgment against him for this

2  amount.

3         The debtor and Patricia Whitman's affidavits in

4  opposition to this, in opposition to this particular Count of

5  the complaint don't really deny any of these acts.  They just

6  try to cast them in a different light, and they try to explain

7  how Mr. Whitman really didn't have any fraudulent intent here.

8  He just really didn't understand what he was doing.

9         But clearly he hasn't repaid the money, and he was

10 sued, Your Honor, previously in this case in an adversary

11 proceeding for another transaction under Section 549(a) for the

12 avoidance of an authorized post-petition transfer -- residual

13 -- rights to residual payments of his business.  So we think he

14 had to know what Section 549(a) was all about:  That you don't

15 transfer property of the bankruptcy estate without Court

16 authority or some sort of permission.  He's already been the

17 subject of an adversary proceeding on exactly this issue.  And

18 so we think that the Court can take judicial notice of the

19 adversary proceeding.

20         We also -- another creditor had filed an objection

21 to his exemption in his home, so he knew there was a pending

22 issue on that.  And we think from all the circumstances, the

23 Court can infer that in fact he knew what he was doing, and he

24 should have known, and if nothing -- if it wasn't fraudulent,

25 it was recklessly malic -- reckless and willfully done, and

1 certainly recklessly done to the point where he should be

2 denied his -- his discharge should be revoked.

3          And I would point to a case, **IN RE:  Magack**, 247 B.R.

4 Section 406, in which the debtor failed to return a tax refund

5 that he had received improperly, and the Court held there in

6 looking at the various circumstances that fraud can be inferred

7 from that type of conduct.

8          That's essentially our position on these various

9 Counts, Your Honor, and we would ask that the Court enter

10 summary judgment on each of them.  We don't think there are any

11 material facts that are still outstanding on those issues.

12          THE COURT:   Thank you, Mr. Liston.

13          MR. LISTON:    Thank you, Your Honor.

14          THE COURT:   Mr. Cymrot.

15          MR. CYMROT:   Thank you, Your Honor.   Your Honor, in

16 the first amended complaint the Trustee makes four claims.   I

17 will address them in order.

18          In Count I, paragraph 42, the Trustee asks the Court

19 to void or avoid the Coastal Capital mortgage.   We -- that is,

20 the debtor and Patricia Whitman, do not oppose this.   I want to

21 point out that they have not answered the second amended

22 complaint and the additional relief sought by the -- by the

23 Trustee in the second amended complaint.   That second amended

24 complaint contains a provision for withdrawing the exemption of

25 $15,000 and for entering a judgment against Mr. Whitman, the

1  debtor, for some amount of money, and we have not had the

2  chance to respond to that.

3          In Count --

4          THE COURT:   I'm not -- I'm not going to rule on that

5  issue today, in any event.

6          MR. CYMROT:   Okay. Okay.  I wanted to raise it, Your

7  Honor.

8          In Count II, the Trustee asks for authority to sell

9  the residence, pursuant to 363(h).  If the Trustee has the

10  right to sell the residence and distribute the proceeds of sale

11  forthwith, Patricia Whitman then asserts that she has raised

12  the following genuine issue of material fact:  Where the sale

13  of the premises will deprive her of the ability to own a home

14  in southeastern Massachusetts that outweighs the benefit to the

15  estate of a sale free of her interest.

16          In one scenario produced by the Trustee, he estimates

17  that he will gross approximately $50,000.  But this number is

18  subject to the cost of sale, which he has estimated at $16,791,

19  and the exemption on which the Court has not ruled yet.  The

20  question of material fact becomes whether the benefit to the

21  estate, which can be calculated at some $18,000, exceeds the

22  detriment to Patricia Whitman arising from having her residence

23  sold involuntarily.

24          The Trustee has not taken account in his presentation

25  of any post-petition mortgage payments that he has made, and he

1  has made those post-petition mortgage payments.  I -- we

2  acknowledge that in saying this we have not taken account of

3  the withdrawal of equity.  The situation is -- there are

4  balancing equities, if you will, on both sides; and ultimately,

5  as I believe the law provides, the decision on the Count of

6  detriment versus benefit is equitable, and on the equities we

7  assert that the Trust -- that there is a material issue of

8  fact, and that testimony of the parties is necessary to resolve

9  this.

10        In Count III, the Trustee asks for an order to

11  distribute the proceeds of the sale of the residence forthwith.

12  Unless the Court has questions, I'm not going to offer any

13  further comment on it.

14        THE COURT:  I think Judge O'Toole has set the law of

15  the case on that.

16        MR. CYMROT:  Yes, although, Your Honor, I will point

17  out that I believe the -- Patricia Whitman still has a right of

18  appeal to the First Circuit.  If the Court rules --

19        THE COURT:  Well, let's see.  Judge O'Toole's

20  decision was --

21        MR. CYMROT:  August 1st.

22        THE COURT:  August 1st.  So the time has not yet

23  run.

24        MR. CYMROT:  Yes.

25        THE COURT:  But as far as I'm concerned, I go on the

1  basis that that's the law for the moment.

2        MR. CYMROT:   I understand.  Yes, sir.  But if the

3  Court rules today, I would ask that it consider an oral motion

4  to stay the sale until an appeal can be heard in the First

5  Circuit, if the Court rules today.

6        THE COURT:   Mmhmm.

7        MR. CYMROT:   On Count IV, the Trustee seeks

8  revocation of the trust -- of the debtor's discharge.

9        The debtor has raised the following issue of material

10 fact:  Whether the debtor acted with reckless indifference to

11 the truth, the truth being that he did not hold or have the

12 right to refinance -- to participate in the refinance of the

13 mortgage interest.

14       I think it's safe to say that he had the right to

15 take more debt, if somebody would lend him money; but he did

16 not have the right to mortgage an interest in the house.

17       The debtor avers that he did not believe the estate

18 held an interest in the proceeds of the refinance.  While he

19 understood that he had an obligation to repay the Coastal

20 Capital mortgage, he did not understand that the estate, which

21 at the time had been open about five years, retained its

22 interest in the residence or that he held bare legal title.

23       In his affidavit, the debtor offers additional facts

24 inconsistent with a finding of reckless conduct.

25       Patricia Whitman assisted the Trustee by providing

1  copies of Coastal Capital's loan documents during discovery.

2  The Court may take judicial recognition of the fact that a

3  debtor acting in reckless disregard of the Trustee's rights may

4  not, along with his spouse, cooperate several months later in

5  disclosing documents that evidence the wrongful scheme.

6  Also, as I pointed out, the Whitmans, the debtor and

7  Patricia Whitman, have paid their refinanced mortgage.  They

8  paid it consistently.  They did not leave the state with the

9  proceeds of the refinance or leave, abandon the premises.

10  Rather, they have resided in the residence since the start of

11  the debtor's case, and have made mortgage payments on a regular

12  basis.  Therefore, the debtor asks that the Court deny summary

13  judgment on the fourth Count.

14  For these reasons we ask you to deny the motion for

15  summary judgment.  Thank you, Judge.

16  THE COURT:  Thank you, Mr. Cymrot.  Give me just a

17  moment.

18  (Pause)

19  THE COURT:  All right.  We have what I fear may be

20  the first of the cases of the mysteriously missing mortgagee.

21  This would be a much easier situation if Coastal had appeared

22  to represent their own interest, but they haven't.  I notice in

23  today's *Globe* that Countrywide is alive, if not well -- at

24  least alive.  So there was somebody who could have answered,

25  had someone wanted to.  Nevertheless, they have not.

1        The Trustee's primary argument under Count I of this

2   motion for summary judgment is that the mortgage be avoided as

3   a void post-petition transfer.  The peculiar facts of the case

4   are as stated by Mr. Listen:  That is, that post-petition the

5   debtor granted a mortgage; that somehow it wasn't recorded

6   until after the Trustee had filed the notice of the bankruptcy

7   in the land records.

8        Under 549, that mortgage is void, and we don't have

9   to get into any interesting equitable issues such as those

10  suggested by Judge Selyea in his decision on void mortgages

11  because Coastal isn't here to assert any rights.  So I have no

12  trouble in ruling specifically -- and I'll leave to Mr. Liston

13  to draft an appropriate order for recording with the Registry

14  of Deeds that will satisfy the Supreme Court of titles.  And

15  that mortgage is void.

16       Okay, the mortgage being void, where do we go from

17  there?  Once again, Coastal is not here; and I'm not going to

18  worry about Coastal.  If Coastal isn't here to show up, or is

19  deceased, that's their problem, not our problem.  The mortgage

20  is void.

21       Count II seeks an authorization to sell the property,

22  including the co-debtors' sales -- share, rather, under 363(h).

23  I don't think equities cut into that situation to the extent

24  that Mr. Cymrot has suggested, and I believe that the Trustee

25  has fully satisfied all of his burdens, not only as to the

1  right to sell but as to his authority to distribute the

2  proceeds upon sale, which is now going to be more money, since

3  I voided the Coastal Mortgage.

4         So I am perfectly prepared to and will, in fact,

5  grant summary judgment to the Trustee as to Counts I, II, and

6  III.

7         Let me make specific -- and I'll put in my order that

8  I am not determining the actual amount of money that will be

9  distributed on the sale.  I think based upon the stipulated

10  facts that we have, the parties can figure that out; and if

11  they cannot, they can apply to me for further order.  Nor am I

12  ruling on the validity of the claimed exemption of the debtor.

13  That can wait for another day.  We don't have any money to

14  fight about yet.  Nor am I -- no, hold that.  Stop right there.

15         I'll accept what Mr. Cymrot argued as an oral motion

16  to stay this decision pending appeal.  That's a hard thing for

17  him to argue, since I wouldn't say it if I didn't think I was

18  right; and under the --- the -- I think it was Judge Yacos who

19  said that I have to believe that he has at least a 49 per cent

20  chance of winning before I can grant a stay pending appeal.  I

21  don't think he's got a 49 per cent chance, so the oral motion

22  for a stay pending appeal will be denied.

23         That gets me up to Count IV in which the Trustee

24  seeks a revocation of the debtor's discharge.  I think there is

25  enough smoke around the allegations.  I believe Mr. Cymrot's

1  arguments as to intent are well taken.  There is an issue of

2  fact here.  I cannot grant summary judgment as to Count IV, so

3  summary judgment will be denied as to Count IV of the

4  complaint.

5        I think that covers everything I had before me,

6  gentleman.  Thank you very much.

7        MR. CYMROT:   Thank you, Your Honor.

8        MR. LISTON:   Thank you, Your Honor.

9  (End at Tape #1, Index #2036.  Approximately 10:10 a.m.)

10          * * * * * * * * * * *

11        I certify that the foregoing is a true and accurate

12  transcript from the electronically sound recorded record of the

13  proceedings.

_____

**GLORIA C. IRWIN**                     **Date**
**Certified Transcriber NJ AOC200**
    **Federal  CERT #122**
**GCI TRANSCRIPTION SERVICES**
**210 Bayberry Avenue**
**Egg Harbor Township, NJ  08234-5901**
**609-927-0299  1-800-471-0299**
   **FAX  609-927-9768**
**e-mail  irwingloria@comcast.net**